Herbert, J.
The question here presented is whether the decision of the Board of Tax Appeals is unreasonable or unlawful.
In the consideration of the issues in the instant case it should be recalled that the appraisal and revaluation applied only to the industrial properties of the three large steel companies, and in the case at bar only the property of Republic is pertinent. The land itself is excluded. There are no commer *181 cial or residential properties involved. The questions here affect solely and only the value of the buildings and improvements owned by Republic. In ascertaining the true value in money of such property, economic conditions affecting the entire steel industry cannot be overlooked.
The ground rules controlling the procedure to be followed in the revaluation of these buildings and improvements were set out in a contract between the Cuyahoga County auditor and The J. M. Cleminshaw Company, an appraisal firm, executed on or about the 5th day of February 1959.
The second paragraph of that contract provides:
“All such properties involved shall be appraised in accordance with the instructions issued by the Ohio Board of Tax Appeals in its journal entry of December 6, 1957, which, among other things, specifies that the cost of reproduction be based upon ‘the prices prevailing during the month of January, 1956,’ in this county for labor and materials. New construction shall be valued in relation to the amount physically existing on January 1, 1959. In addition, there shall be furnished for each building or improvement, a factor that may be used to arrive at a value based upon the 1941-2 level of reproduction costs used in our 1955 general reappraisal of similar buildings or improvements.” (Emphasis added.)
At the foot of page 12 and at the top of page 13 of the decision of the Board of Tax Appeals is the following:
“From the testimony and evidence in the record, it appears that the last general reappraisal of real property in Cuyahoga County, Ohio, was in the year 1955 and that industrial buildings and improvements to land were placed on the tax duplicate for that year (and for the other years here in issue) by the county auditor on the basis of 1941-1942 reproduction cost levels.” (Emphasis added.)
Section 2, Article XII of the Constitution of Ohio, in part provides:
“Land and improvements thereon shall be taxed by uniform rule according to value.”
Section 5717.01, Revised Code, in its concluding paragraph provides:
“The Board of Tax Appeals may order the appeal to be heard upon the record and the evidence certified to it by the *182 county Board of Revision, or it may order the hearing of additional evidence, and it may make such investigation concerning the appeal as it deems proper.”
Section 5717.03, Revised Code, in part provides:
“In case of an appeal from a decision of a county Board of Revision the Board of Tax Appeals shall determine the true value in money of the property whose valuation or assessment by the county Board of Revision is complained of, or in the event the complaint and appeal is against a discriminatory valuation * * *.”
Within these constitutional and statutory boundaries, consideration will now be given to the assignments of error and other questions of law raised by the appellants.
Assignments of error:
1. “The decision of the Board of Tax Appeals finding the true value in money of all of the buildings in question for each of the years 1959 and 1960 to be $24,485,840.00, is unsupported by and contrary to the evidence and is arbitrary, capricious, unreasonable and unlawful.”
This assignment of error encompasses practically a review of the entire record.
William Cleminshaw of the appraisal firm was the only witness appellants produced before the Board of Tax Appeals. The parties agreed that the reproduction cost new less depreciation of the buildings and improvements of Republic as of 1956 was $52,848,110. The auditor could not under his oath of office place this property on the duplicate for 1959 at $52,848,110, for the reason that all other industrial buildings and improvements in the county were on the 1959 tax duplicate at 1941-1942 reproduction cost levels. To do so would violate the tax uniformity requirement of Section 2, Article XII of the Constitution of Ohio, and the ‘ ‘ discriminatory valuation ’ ’ provision of Section 5717.03, Revised Code.
To reduce the reproduction cost new less depreciation figure of $52,848,110 to 1941-1942 cost levels, the Cleminshaw firm used the trend conversion factor of 46.18%, arriving at the sum of $24,405,260 as the true value in money placed upon the buildings and improvements here in question by the Auditor and the Board of Revision of Cuyahoga County.
The Board of Tax Appeals, in its decision, points out weak *183 nesses in the testimony of Cleminshaw in his attempts to justify the trend conversion factor of 46.18% submitted by his firm.
Jensen, Bowen & Farrell, an engineering and appraisal firm, employed by Eepnblic for the express purpose of determining such a factor, set 41.9% as a “sound value trend.” Using this trend conversion factor, i. e., 41.9%, 'the assessed value according to Eepnblic should be $22,143,360.
The decision of the Board of Tax Appeals, at page 17, continues :
“F. W. Dodge, (Dow calculator) general building construction, sets the percentage at 43.4. American Appraisal Company, building construction excluding plumbing, heating, lighting, etc., sets the percentage of 37.5. Boeckh (commercial and factory buildings — steel frame — brick and steel, and brick and concrete) sets the average percentage of 43.9.”
The board made a further study of its own and reached the conclusion that the most reasonable percentage to be used as a trend factor was 44%.
Using this factor, the Board of Tax Appeals reached the conclusion that the true value of 17 parcels (research laboratory omitted) was $23,252,880.
Summarized, the final conclusions reached by the Board of Tax Appeals are:
Buildings and improvements (17 parcels) .. .$23,252,880.00
Eesearch laboratory value ................$ 1,232,960.00
Total sound value January 1956 ......$24,485,840.00
According to the calculations of the Cleminshaw company, and as used by the Board of Eevision and the auditor, the research laboratory summarization of figures is as follows:
Eeplacement value as of January 1956 ......$4,410,610.00
Depreciation (3%) .........................$ 132,320.00
Value before trend.........................$4,278,290.00
Value after trend (46.18%) .................$1,975,720.00
The conclusions reached by Eepnblic are:
“Actual construction cost (1958) .............$2,802,180.
“Less depreciation at 3% ....................$ 84,065.
“Sound value before trend .................$2,718,115.
“Sound value after trend (41.1% of $2,718,115) $1,117,145,”
*184 The evidence is ample to support the findings of the Board of Tax Appeals under this assignment of error and it is overruled.
The second and third assignments of error will be considered together. They question the use of a trend conversion factor percentage in arriving at a value of the buildings and improvements in question “based upon the 1941-42 level of reproduction costs used in our 1955 general reappraisal of similar buildings or improvements.”
The method and procedure to be followed in determining such value was set out in the February 5, 1959, contract between the auditor and the Cleminshaw company. The trend factor was specifically required.
The auditor and the Board of Revision as well as Republic accepted the provisions of this contract as the basis for determining value. Evidence, though conflicting, was presented by the parties before the Board of Revision upon the matter of an appropriate trend conversion factor. None of the parties challenged this method of procedure.
Evidence was presented to the Board of Tax Appeals by all parties upon Republic’s appeal. None of them challenged the method and procedure being used to determine value. The sound value as adopted by the auditor in appraising the property for assessment was in part determined by the trend factor percentage set by Cleminshaw.
It was essential to a rational reappraisal of value as of •January 1959 to recognize that the Cuyahoga County sexennial reappraisal of 1955 used the 1941-1942 level of reproduction cost. At no time in the proceedings before the Board of Revision or the Board of Tax Appeals was the relevancy of ascertaining the proper 1941-1942 trend factor percentage challenged. It is now too late for appellants in their brief to change or modify their theory and to question the contract of 1959 and the procedure therein provided to be used in determining the value of the buildings and improvements here.
“Issues not made by the pleadings in the lower court and which the record does not show were tried below, and which are diametrically opposed to the theory upon which the plaintiff proceeded below <?an not be raised for the first time on review, *185 notwithstanding the question may be one which if presented by the record the reviewing court would deem worthy of the gravest consideration.” Coppin, a Taxpayer, v. Hermann et al., Trustees, 7 N. P., 528, judgment affirmed without opinion, 63 Ohio St., 572.
The record presents ample evidence to support the finding of the Board of Tax Appeals that 44% is a reasonable trend factor.
The second and third assignments of error are overruled.
The record discloses that the Board of Tax Appeals entertained this appeal in compliance with the law, exercised sound discretion and entered a decision that is neither unreasonable nor unlawful.
The decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

Taft, C. J., Zimmerman, Matthias, O’Neill and Griffith, JJ., concur.
Gibson, J., concurs in the syllabus and judgment.